UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DONALD E. HICKSON, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| | § | Civil Action No. 4:17-cv-3252 |
| Plaintiff, | § | |
| | § | JURY TRIAL DEMAND |
| v. | § | |
| | § | |
| CALPINE CORPORATION, FRANK CASSIDY, THAD HILL, LAURIE BRLAS, JACK A. FUSCO, MICHAEL W. HOFMANN, DAVID C. MERRITT, W. BENJAMIN MORELAND, ROBERT A. MOSBACHER, JR., and DENISE M. O'LEARY, | § § § § § § § § | |
| | § | |
| Defendants. | § | |

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF
## SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Donald E. Hickson ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Calpine Corporation ("Calpine" or the "Company") against Calpine and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Calpine, "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation M-A, 17

C.F.R. § 229.1015(b)(4), in connection with the Proposed Transaction by and among Calpine, Volt Parent, LP ("Parent"), and Volt Merger Sub, Inc. ("Merger Sub").[1]

2.      On August 18, 2017, Calpine and Energy Capital Partners ("Energy") issued a joint press statement announcing that they had entered into an Agreement and Plan of Merger (the "Merger Agreement"), under which Merger Sub will merge with and into Calpine, with Calpine surviving the merger as a subsidiary of Parent (the "Proposed Transaction").   The Proposed Transaction is valued at approximately $5.6 billion.

3.      Pursuant to the terms of the Merger Agreement, holders of Calpine common stock will receive $15.25 per share in cash (the "Merger Consideration).

4.      The Merger Consideration is insufficient and undervalues the Company.  Indeed, the Company's stock price closed at $16.00 per share during the 52-week period ending May 9, 2017, meaning shareholders are only being offered approximately a measly 5% premium for their shares.  Furthermore, as outlined below, the Merger Consideration is the result of a flawed sales process.

5.      On October 19, 2017, in order to convince Calpine's shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Preliminary Schedule 14A Proxy Statement (the "Proxy Statement") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

---

[1]  Volt Parent, LP, and Volt Merger Sub, Inc. were formed by Energy Capital Partners III, LLC on behalf of itself, its affiliated funds, and the consortium of co-investors, including Access Industries, Inc. and the Canada Pension Plan Investment Board, for the purpose of entering into the merger agreement and completing the Proposed Transaction.  Calpine Corporation, Preliminary Proxy Statement (Schedule 14A) (October 19, 2017).

6.     In particular, the Proxy Statement contains materially incomplete and misleading information concerning: (i) the valuation analyses performed by Calpine's financial advisor, Lazard Frères & Co. LLC ("Lazard"), in support of their fairness opinions; and (ii) the potential conflicts of interest Lazard faced as a result of its historical dealings with either party.

7.     The special meeting of Calpine shareholders to vote on the Proposed Transaction is forthcoming.  It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's shareholders prior to the forthcoming shareholder vote so that they can properly exercise their corporate suffrage rights.

8.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, Rule 14a-9, and Regulation M-A.  Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Calpine's shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

10.     Personal jurisdiction exists over each Defendant either because Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Calpine maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

12.     Plaintiff is, and at all relevant times has been, a shareholder of Calpine.

13.     Defendant Calpine is a Delaware corporation and maintains its principal executive offices at 717 Texas Avenue, Suite 1000, Houston, Texas, 77002.  The Company acquires, develops, owns, and operates power generation facilities, as well as sells electricity in the United States.  The Company also provides thermal energy for industrial customers.  Calpine common stock is listed and traded on the NYSE under the ticker symbol "CPN."

14.     Individual Defendant Frank Cassidy is, and has been since 2008, a Calpine director and has served as the Chairman of the Board since 2016.

15.     Individual Defendant Thad Hill is, and has been since 2014, a Calpine director and currently serves as the President and Chief Executive Officer of the Company.

16.     Individual Defendant Laurie Brlas is, and has been since 2016, a Calpine director.

17.     Individual Defendant Jack A. Fusco is, and has been since 2008, a Calpine director.

18.     Individual Defendant Michael W. Hofmann is, and has been since 2013, a Calpine director.

19.     Individual Defendant David C. Merritt is, and has been since 2006, a Calpine director.

20.     Individual Defendant W. Benjamin Moreland is, and has been since 2008, a Calpine director.

21.     Individual Defendant Robert A. Mosbacher, Jr. is, and has been since 2009, a Calpine director.

22.     Individual Defendant Denise M. O'Leary is, and has been since 2008, a Calpine director.

23.     The parties in paragraphs 14 through 22 are referred to herein as the "Individual Defendants" and/or the "Board," collectively with Calpine, "Defendants."

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Calpine (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

25.     This action is properly maintainable as a class action because:

a.      The Class is so numerous that joinder of all members is impracticable.  As of July 24, 2017, there were approximately 360.67 million shares of Calpine common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.  The actual number of public shareholders of Calpine will be ascertained through discovery;

b.      There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)      whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy Statement in violation of Section 14(a) of the Exchange Act;

ii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii)    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy Statement.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.    A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I.    The Merger Consideration Is Inadequate

26.    Calpine was founded in 1984 and is a premier power generation company with 80 power plants primarily in the U.S.  The Company sells power and related services that it produces to its wholesale customers who include commercial and industrial end-users, state and regional wholesale market operators, and our retail affiliates who serve retail customers.  Calpine purchases primarily natural gas and some fuel oil as fuel for its power plants and engages in related natural gas transportation and storage transactions.

27.    The Merger Consideration that Calpine shareholders stand to receive if the Proposed Transaction is consummated fails to adequately compensate them for their shares.

28.    On August 18, 2017, Calpine and Energy issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **Calpine Agrees to be Acquired by Investor Consortium**
> **Led by Energy Capital Partners**
>
> (HOUSTON, Texas) – August 18, 2017 – Calpine Corporation (NYSE:CPN), America's largest generator of electricity from natural gas and geothermal resources, today announced that it has entered into a definitive agreement under which Energy Capital Partners (Energy Capital or ECP) along with a consortium of investors led by Access Industries and Canada Pension Plan Investment Board will acquire Calpine for $15.25 per share in cash, or $5.6 billion.  The purchase price represents an approximately 51% premium to Calpine's unaffected share price of $10.07 on May 9, 2017, the day prior to initial media speculation of a transaction.

The transaction follows a competitive strategic review process and was unanimously approved by Calpine's Board of Directors.

"We are very pleased to announce this proposed transaction and are confident it is in the best interests of our shareholders and stakeholders," said Frank Cassidy, Chairman of Calpine's Board of Directors. "This transaction is the result of an exhaustive review of strategic alternatives undertaken by our Board, with the assistance of outside advisors, to maximize shareholder value and unlock the company's intrinsic value, while eliminating execution risk. We are confident that this is the best outcome of that review and look forward to shareholder approval."

"We are excited to partner with Energy Capital, a leading private equity investment firm focused on North American energy infrastructure and power assets," said Thad Hill, President and Chief Executive Officer of Calpine. "With ECP, Calpine will be able to operate as it always has - executing on our strategic objectives of providing safe and reliable power and serving our retail and wholesale customers with differentiated products and services. We will also continue to strengthen our wholesale power generation footprint, while benefiting from ECP's support, industry expertise and long-term investment horizon. In short, Calpine will continue to be the nation's premier competitive power company."

Tyler Reeder, a partner at Energy Capital Partners, stated: "We look forward to joining forces with Calpine's talented team as they continue executing their strategy. We see significant value in Calpine's operational excellence and strong and stable cash flows and have been impressed by the Company's exceptional leadership and talented employees. We do not expect to make any changes to the way Calpine operates its business and intend to remain focused on providing the high level of service to which Calpine's wholesale and retail customers have become accustomed. Finally, we do not intend to make any changes to the Company's financial policy or previously announced $2.7 billion deleveraging plan."

Calpine will maintain its corporate headquarters in Houston, Texas with the current management team expected to remain in place.

**"Go-Shop" Period**
The agreement includes a 45-day "go-shop" period, during which Calpine, with the assistance of its legal and financial advisors, can actively solicit, evaluate and potentially enter into negotiations with parties that offer superior alternative proposals. The agreement provides for the payment of a termination fee by Calpine of $142 million to the investor consortium in the event that the agreement is terminated for a superior proposal; except that the termination fee will be $65 million if Calpine terminates the agreement for a superior proposal from certain exempted persons prior to

12:01 a.m., Eastern time, on the 106th day after the date of the agreement. There can be no no assurance that this process will result in a superior proposal. Calpine does not intend to disclose developments during this process unless and until its Board has made a decision with respect to any potential superior proposal.

**Stockholder and Regulatory Approval**
The proposed transaction is subject to approval by stockholders representing a majority of outstanding shares of common stock of Calpine. In addition, the transaction is subject to expiration or termination of any applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. Other necessary regulatory filings include Federal Energy Regulatory Commission (FERC), New York Public Service Commission (NYPSC), the Public Utility Commission of Texas (PUCT) and other states, as necessary.

The parties currently expect the transaction to close in the first quarter of 2018.[2]

29.     The Merger Consideration offered to Calpine's shareholders in the Proposed Transaction is unfair and inadequate because, among other things, the intrinsic value of the Company's common stock is materially in excess of the Merger Consideration being offered in the Proposed Transaction given the Company's prospects for future growth and earnings. The Proposed Transaction will deny Class Members their right to fully share equitably in the true value of the Company.

30.     For example, on March 29, 2017, Market Realist—a leading investing and financial news site—noted how Wall Street analysts set a $15.07 price target, which represented a nearly 40.0% increase in one year from the Company's current price of $10.77.[3] Furthermore,

---

[2] Calpine Corporation, Current Report (Form 8-K), at Exhibit 99.1 (Calpine Corporation Pres Release Dated August 18, 2017) (August 18, 2017).

[3] *Analyst Recommendations and Price Targets for Calpine*, MARKET REALIST (March 29, 2017), http://marketrealist.com/2017/03/analyst-recommendations-and-price-targets-for-calpine/.

"[o]f the 17 analysts tracking Calpine, eight have recommended a 'buy' for the stock, three have recommended a 'strong buy.'"

31.    The Company's optimistic outlook continued when the Company announced its First Quarter 2017 Financial Results, released on April 28, 2017, which were very positive. Notably, Operating Revenues increased to $2.28 billion from $1.61 billion, representing a more than 40% increase.[4]

32.    Individual Defendant Thad Hill, Calpine's President and CEO, commented on the results:

> Today, we report first quarter adjusted EBITDA of $326 million and, more importantly, we reconfirm our full year 2017 guidance range of $1.8 billion to $1.95 billion.
>
> […]
>
> But we're also blessed with the fact that we turn every $1 of EBITDA into $0.75 of unlevered free cash flow. This is in part because of the nature of our assets and the lack of environmental retrofits and historical environmental liabilities and in part because of our $6.7 billion of tax net operating losses, or NOLS. All this supports our ability to continue generating stable financial results, while executing upon our plan to delever by something approaching $3 billion over the next three years.[5]

33.    In sum, the Merger Consideration fails to adequately compensate Calpine shareholders and is the result of a flawed sales process during which Company management and the Board failed to conduct a sufficient and robust review of strategic alternatives, and instead

---

[4] Calpine Reports First Quarter 2017 Results, Reaffirms 2017 Guidance; Announces Cancellation of New Texas Power Plant, Replaces with 10-Year Supply Contract (March 28, 2017), available at: http://investor.calpine.com/news/press-release-details/2017/Calpine-Reports-First-Quarter-2017-Results-Reaffirms-2017-Guidance-Announces-Cancellation-of-New-Texas-Power-Plant-Replaces-with-10-Year-Supply-Contract/default.aspx.

[5] Calpine (CPN) Q1 2017 Results – Earnings Call Transcript, April 28, 2017, available at: https://seekingalpha.com/article/4066950-calpine-cpn-q1-2017-results-earnings-call-transcript?part=single.

focused on procuring unique personal benefits for themselves.

## II.    The Proxy Statement Is Materially Incomplete and Misleading

34.    On October 19, 2017, Calpine filed the Proxy Statement with the SEC in connection with the Proposed Transaction.   The Proxy Statement solicits the Company's shareholders to vote in favor of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

35.    In short, the Proxy Statement fails to provide sufficient information for shareholders to assess the valuation analyses performed by Morgan Stanley in support of its fairness opinion.

36.    First, the Proxy Statement fails to disclose material information concerning Lazard's *Discounted Cash Flow Analysis* and *Discounted Cash Flow Analysis—Updated February 2017 Marketing Projections*.   Specifically, the Proxy Statement fails to disclose the inputs and assumptions underlying the terminal year NOL-adjusted enterprise value to EBITDA multiples ranging from 6.75x to 7.75x.   The omission of this material financial information renders both the summary of Lazard's *Discounted Cash Flow Analysis* on pages 60 through 61 of the Proxy Statement and its Implied Price per Share Range and the *Discounted Cash Flow Analysis—Updated February 2017 Marketing Projections* on page 62 and its Implied Price per Share Range materially incomplete and misleading.

11

37.     Indeed, as a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…."  *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….  This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion *unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices*.  The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

38.     Moreover, the Proxy Statement fails to disclose Net Operating Losses ("NOLs") for Calpine.  See Proxy Statement 59-62.  Here, Calpine's NOLs are being utilized in Lazard's financial analyses, including the *Selected Public Company Analysis*, *Discounted Cash Flow Analysis*, and *Discounted Cash Flow Analysis—Updated February 2017 Marketing Projections*.  However, this material information concerning the Company exists and is not being disclosed to Calpine shareholders.

39.     With respect to *Selected Public Company Analysis*, the Proxy Statement fails to disclose the individual multiples Lazard utilized for each of the companies included in the

analyses.  Proxy Statement 59-60.  A fair summary of analyses requires the disclosure of the individual multiples for each company utilized.  Here, the analysis fails to disclose the multiples for Vistra Energy Corp., despite the fact that it was used in the analysis.  Merely providing the high, mean, and low multiples that a banker applied to render the NOL-adjusted Enterprise Value to 2017E/2018E EBITDA is insufficient, as shareholders are unable to assess whether the banker applied the appropriate multiples or, instead, applied unreasonably low multiples in order to drive down the implied valuation of the Company.  Accordingly, the omission of the individual multiples renders the summary of these analyses set forth on pages 59 through 60 of the Proxy Statement materially incomplete and misleading.

40.     In addition, with respect to the *Selected Precedent Transactions Multiple Analysis*, the Proxy Statement fails to disclose the individual multiples for each precedent transaction included in the analyses.  Proxy Statement 62-63.  Merely providing the high, mean, median, and low multiples that a banker applied to render the Selected Precedent Transactions Enterprise Value to EBTIDA Multiples insufficient, as shareholders are unable to assess whether the banker applied the appropriate multiples or, instead, applied unreasonably low multiples in order to drive down the implied valuation of the Company.  Accordingly, the omission of the individual multiples renders the summary of these analyses set forth on pages 62 through 63 of the Proxy Statement materially incomplete and misleading.

41.     With respect to the *Illustrative Discounted Future Stock Price Analysis*, the Proxy Statement fails to disclose the following key components used in the analysis: (i) the inputs and assumptions underlying the calculation of NOL-adjusted enterprise value to EBITDA multiples ranging from 7.25x to 8.25x; (ii) the inputs and assumptions underlying the calculation of the

discount rate range of 6.00% to 12.25%; and (iii) the Net Debt and Non-Controlling Interest as of December 21, 2020.

42.    The Recommendation Statement also materially misleads stockholders as to the potential conflicts of interest faced by Calpine management and the Board.

43.    In particular, the Proxy Statement disclose any information regarding past dealings or a historical relationship between Lazard and either Calpine or Energy.  Disclosure of "any compensation received or to be received as a result of the relationship between" a financial advisor and the subject company or its affiliates is required pursuant to 17 C.F.R. § 229.1015(b)(4).  Such information is also material to Calpine shareholders.  Indeed, it is imperative for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts.  A financial advisor's own proprietary financial interest in a proposed merger must be carefully considered in assessing how much credence to give its analysis.  A reasonable shareholder would want to know what important economic motivations that the advisor, employed by a board to assess the fairness of the merger to the shareholders, might have.  Especially when that motivation could rationally lead the advisor to favor a deal at a less than optimal price, because the procession of a deal was more important to him, given his overall economic interest, than only approving a deal at truly fair price to shareholders.  The complete omission of any of Lazard's previous dealings or historical relationships renders the Proxy incomplete and misleading.

44.    In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable

to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 240.14a-9 Promulgated Thereunder

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

47.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy Statement communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

48.     The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

49.     Defendants have issued the Proxy Statement with the intention of soliciting shareholder support for the Proposed Transaction.  Each Defendant reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information concerning: (i) the valuation analyses performed by Lazard; and (ii) the potential conflicts of interest Lazard faced as a result of its historical dealings with either party.

50.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

51.     The Individual Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy Statement states that the Financial Advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered both the financial analyses provided by Lazard as well as their fairness opinions and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The

Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to review the Lazard's analyses in connection with their receipt of the fairness opinions, question Lazard as to the derivation of its fairness opinion, and be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

52.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

53.     Calpine is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy Statement.

54.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

55.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56.     The Individual Defendants acted as controlling persons of Calpine within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Calpine, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

57.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

59.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

60.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of their conduct, Plaintiff will be irreparably harmed.

62.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy Statement;

C.      Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  October 25, 2017.

Respectfully submitted,


        */s/ Thomas E. Bilek*
Thomas E. Bilek
TX Bar No. 02313525 / SDTX Bar No. 9338
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720

*Attorneys for Plaintiff*

**OF COUNSEL:**

Juan E. Monteverde
**MONTEVERDE & ASSOCIATES PC**
350 Fifth Avenue, Suite 4405
New York, NY  10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com